**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | |
|---|---|
| WATEZ G. PHELPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. _____ |
| | ) |
| IVY TECH COMMUNITY COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WATEZ G. PHELPS, by counsel, in his complaint against Defendant, IVY TECH COMMUNITY COLLEGE, states as follows:

### NATURE OF CLAIM

(1) This action is brought to redress a deprivation of civil rights and to remedy a pattern or practice of disparate treatment based on race, a racially hostile work environment, and retaliation relative to wages, terms, conditions, privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. ("Title VII") and Section 1981 of the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. 1981 ("Section 1981").

(2) Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. 2000e-5(f), (g) and (k), 42 U.S.C. 1981a, and 42 U.S.C. 12112(a).

### JURISDICTION AND VENUE

1

(3) The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a) (3)-(4).

(4) The unlawful employment practices complained of herein occurred within Vanderburgh County, State of Indiana, therefore, venue is proper in the Southern District of Indiana, Evansville Division.

(5) The Equal Employment Opportunity Commission issued a Notice of Right to Sue to Plaintiff. The Notice of Right to Sue was dated 6 January 2022 and was sent to Plaintiff by United States Mail.

## PARTIES

(6) Plaintiff Watez G. Phelps ("Phelps"), at all times relevant to this action, was a resident of Evansville, Vanderburgh County, Indiana. Plaintiff is an African American male.

(7) Defendant Ivy Tech Community College ("Ivy Tech") is an Indiana Corporation with its principal office located in Indianapolis, Indiana. Ivy Tech operated educational facilities in various parts of Indiana, including Evansville, Indiana.

## BACKGROUND FACTS

(8) Before Phelps' employment with Ivy Tech, Phelps worked as a consultant for Ivy Tech for six months for the development of a Hospital Program. In or about August 2007, Phelps was hired by Ivy Tech for the position of Faculty Fellow and Program Chair. Phelps was promoted to the positions of Assistant Professor and Program Chair for Hospitality Administration and in or about 2011, was promoted to the rank of Associate Professor and Program Chair for Hospitality Administration. Phelps' employment contract was not renewed and he was removed from his position on or about April 15, 2021. The reason given to Phelps for his removal was because of a "low student enrollment."

(9) During the course of Phelps's employment with Ivy Tech Community College beginning in 2008, Phelps was subjected to a pattern or practice of disparate treatment, hostile work environment, and retaliation that led to his removal from his employment and the non-renewal of his contract with Ivy Tech on April 15, 2021.

(10) The Hospitality Administration Program at Ivy Tech in Evansville, Indiana was created by Phelps during the time Phelps was employed as a Consultant to Ivy Tech. After Phelps was employed by Ivy Tech, Phelps administered and continued to develop the program. The Hospitality Administration Program offered a degree two concentrations: a degree in Hospitality Administration and a degree in Culinary Arts. The Hospitality Administration Program was considered to be a high-profile degree initiative with significant potential for growth and source for the development of professionalism for future hospitality professionals in the Southwestern region of the state.

(11) The Hospitality Administration Program at the Evansville campus reported to the Division of Business and Public Services. Other programs that reported to the Division of Public and Social Services and Business were: Early Childhood Education; Visual Communication; Criminal Justice; Human Services; Computer Information Systems; and Business. The Business and Public Services Division reported to a Dean, Chris Kiefer ("Kiefer"). Kiefer, a white male, reported to the Vice Chancellor of Academic Affairs, Kelly Cozart ("Cozart"). Cozart is a white female. Phelps was the only person of color in the Division of Public and Social Services and Business.

(12) In 2008, Phelps complained to the Division Dean, Carol Katowitz ("Katowitz"), that Cozart made a racially offensive comment about then presidential candidate, Barack Obama ("Obama"). Cozart, at the time, was the chair of the Interior Design

3

Program. Cozart made the comment to Lisa Muller ("Muller"), an administrative assistant, and in the presence of a student worker. Phelps reported that Cozart stated she was in Bloomington, Indiana during the week that Obama was campaigning in Bloomington and that had she seen Obama, she would have run over him. Muller commented that if Obama became president, the country would go up in flames. The day after Phelps complained about Cozart's remark, Cozart stopped in the doorway of Phelps' office with "if looks could kill" expression on her face, stared briefly and stated, "You're an asshole."

(13) In 2008, Phelps received his first employee performance evaluation by Katowitz. Katowitz told Phelps that he would not score as high as Chris Kiefer ("Kiefer") because Kiefer was the best. Katowitz also told Phelps that Phelps did not want to mess with Kiefer because Kiefer was a former sheriff and would go into police mode. Phelps does not know why or what prompted Katowitz to make the comments that she made to him. Phelps did not respond to the comments made to him by Katowitz. Phelps did discover years later that Kiefer either received credit and compensation for teaching an "offload" or additional credit for teaching one more class than what was required by contract. Kiefer had a program that gave bikes to children in the community and Kiefer organized a safety academy to teach the kids how to ride the bikes responsibly. At the time and for eight years, Phelps organized a college fair for 150-500 families for eight years, which also benefited enrollment at Ivy Tech. Phelps did not at any time receive any credit or compensation for offloads or for any of the extra initiatives that were beyond his administrative and teaching duties.

(14) In or about 2012, Marilyn Britton ("Britton") became the Director of Human Resources. During that time, the Hospitality Program was in line to receive Perkins Funds to expand the training and add a customer service lab in an adjoining classroom. Phelps assembled

a hiring committee to select an assistant program chair for the Hospitality Program (Hospitality Administration and Culinary Arts). Britton was a de facto member of the hiring committee. The other two members were Shauna Garret ("Garret") and Donna Zimmer ("Zimmer"). As Phelps was preparing to collect resumes from candidates, the funding for the Hospitality Program was taken away because Katowitz wanted Phelps to hire a person of her choosing, which was outside the hiring process Phelps had set into motion to select the best candidate. Katowitz sought to undermined Phelps' authority and autonomy as the Program Chair for Hospitality Administration Program.

(15) During Spring 2012, Phelps was accused of intimidating Muller, the administrative assistant. The accusation arose after Phelps entered the copy room to retrieve documents from the printer. Muller looked at Phelps and clearly saw that it was Phelps, and then screamed. Phelps was startled, paused in bewilderment, and cautiously retrieved his documents from the copy machine. As Phelps was retrieving his documents, Muller stated "Well, I was not expecting anyone else to come in here." At that moment, the images that went through Phelps' mind were of the "massacre of Emmitt Till." The following day, Katowitz, the division dean, came to Phelps' office and told Phelps to accompany her to human resources. Phelps asked why and Katowitz replied "I cannot tell you." When Phelps and Katowitz arrived at the human resource director's office, Mary Murphy ("Murphy") was in her office with Muller. As Phelps, Katowitz, Murphy, and Muller sat in Murphy's office, Katowitz, Murphy, and Muller engaged in a conversation about puppies and dogs. After about ten minutes into the conversation, Phelps asked, "Why am I in here." Murphy and Katowitz looked at Muller and asked Muller to tell Phelps why he was there, but before Muller could respond, Katowitz stated that Muller said

Phelps was trying to intimidate Muller, to which Muller responded. "Oh, I was just having a bad day yesterday."

(16) In August of 2012, Phelps wanted to hire an adjunct instructor for the baking program. Katowitz was against Phelps hiring an adjunct. Katowitz did not state the reason for her objection to Phelps hiring an adjunct. Katowitz took Phelps before the then Vice-Chancellor of Academic Affairs, Mary Ann Sellars ("Sellars"). Phelps pled his case to hire the adjunct who was a former student. Phelps' plan to hire the adjunct was approved. It has been about eight years, and the adjunct still works at Ivy Tech as a primary baking instructor and is highly respected as a baking entrepreneur in the community.

(17) In 2014, Phelps was required to attend a meeting with Deanna King ("King"), the Regional Chancellor. King's office was located at the campus in Terre Haute, Indiana. The meeting, however, took place at the campus in Evansville, Indiana. King threatened to reprimand Phelps for not being a "team player." The accusation had something to do with hiring an outside cater for the annual spring gala. However, when the accuser did not show up at the meeting, King tore up the reprimand document. Kiefer was also present in the meeting room. Phelps is not certain about who accused him of not being a team player, but believes the accuser was either Cozart or Katowitz. By this time, Cozart was the Vice Chancellor of Academic Affairs.

(18) After becoming the Vice Chancellor of Academic Affairs in 2014, Cozart routinely ignored any recommendations Phelps made for the internal recruitment of non-declared students. Cozart became Kiefer's direct supervisor after she became the Vice Chancellor of Academic Affairs at the Evansville campus. Since Cozart's rise to the Vice Chancellor of Academic Affairs position, Phelps' access to marketing of the Hospitality Administration Program and student recruitment for the Hospitality Administration Program was non-existing

compared to other programs. The Marketing Director, Marsha Jackson ("Jackson") refused to profile the Hospitality Administration Program within the college. Jackson did profile and promoted other programs with large poster profiles of students and instructors. This service was not done for the Hospitality Administration Program.

(19) In or about 2017, Kiefer went to the Southern Indiana Career and Technical Center, a local high school, with Phelps for recruitment but Kiefer did not follow up by establishing a Recruitment Process or Affiliation Agreement, which was Phelps' goal. Phelps had established an Affiliation Agreement in December 2011 at the Earl C Clements Job Corp Center in Morganfield, Kentucky. Only Kiefer was in a position to establish an Affiliation Agreement at the Southern Indiana Career and Technical Center.

(20) Phelps started the "This Is It" gala in 2012 as an annual event to raise funds for Ivy Tech. The event also provided an opportunity to highlight the Hospitality Administration and Culinary Arts students. Although a successful program for the Hospitality Administration Program, the involvement of the Hospitality Administration Program with the gala was undermined by Kiefer and Cozart.

(21) During the spring of 2018, the Director of Development, Erica Schmidt ("Schmidt") ended the involvement of the Hospitality Administration and Culinary Arts program in the annual gala. Schmidt hired an unqualified individual from outside the college to cater the hors d oeuvres for the event. Phelps assigned his program lab tech to monitor the use of the kitchen training lab during the event, which is consistent with the college's policy. Schmidt attempted to have a police officer with the Evansville Police Department escort Phelps' lab tech from the building, however, the Director of Campus Security intervened and prevented the removal of the lab tech. The incident was very unnerving for Phelps' lab tech employee. Phelps reported the

incident to then Chancellor Jonathan Weinzaphel ("Weinzapfel"). Weinzapfel called a special meeting of several college cabinet members-Schmidt, Cozart, Ashli Hale ("Hale"), the Human Resource Director, Alisha Aman, Director of Finance, and non-cabinet member, Kiefer to discuss the mistreatment of the lab tech who worked for Phelps.

(22) From in or about 2018 to April 15, 2021, Cozart prevented Phelps from using her personnel for recruitment purposes. Cozart had personnel who worked at the Southern Indiana Career and Technical Center on a daily basis. There was no rational reason to justify Cozart's refusal for the use of her personnel for recruitment of students to Ivy Tech. As an example of the overall importance of recruitment to Ivy Tech, during Spring Break of 2021, before April 15, 2021, Vic Chamness, Director of Workforce Development, went with Phelps to Southern Indiana Career and Technical Center to recruit students.

(23) At least two years before April 15, 2021, Phelps asked Kiefer if he could teach a course at the Southern Indiana Career and Technical Center. The purpose was to develop a direct pipeline to students for the Hospitality Administration Program. Kiefer denied Phelps' request. Shortly after Phelps denial, Kiefer allowed two programs, the Visual Communication Program, and the Business Program, to teach and offer a dual credit program at the Southern Indiana Career and Technical Center, which gave those programs an opportunity for a direct pipeline of student recruitment into their programs. The program head for those two programs respectively were white.

(24) Beginning in the first week of December 2020 to December 2021, Phelps began an FMLA absence from work taking care of his mother, who was gravely ill at the time. Phelps' FMLA consisted of Phelps working 50 percent of his normal work time. While Phelps was on FMLA, Kiefer did not attempt to recruit students for the Hospitality Administration and Culinary

8

Arts degree programs (Hospitality Administration Program) or provide adequate administrative support for either degree program. Phelps reported this issue to Ashli Hale ("Hale"), Director of Human Resources. Hale sent an email to Phelps and Kiefer with the instruction to "work it out." Kiefer, however, never met with Phelps to work it out. Kiefer was also supposed to advise students in the program but did not perform those tasks. Phelps also did not receive the proper administrative support from Cozart, and Kiefer as required by his FMLA leave. External Marketing was also not done while Phelps was on FMLA. Phelps, however, while on FMLA and during his Spring Break, visited the Southern Indiana Career and Technical Center.

(25) In April 2021, Phelps received an email from Ashli Hale ("Hale"), the Human Resource Director at the Evansville campus requesting his attendance in a zoom meeting with her. The meeting was to take place two days from the date of the email. The email also stated that Cozart would attend the zoom meeting. In the zoom meeting, Phelps was told he was being let go because of a workforce reduction due to low enrollment. Phelps received formal notice dated April 15, 2021, of his workforce reduction and the non-renewal of his contract, effective May 18, 2021.

(26) Hospitality is a common theme throughout the Evansville Regional Economic Development Plan (http://evansvilleregion.com/readi-program/). Therefore, it was unjustified and disingenuous to discontinue the program in April 2021 - 2022.

(27) After Phelps meeting with Cozart and Hale about losing his job due to low student enrollment, Phelps contacted the Admissions Office for information about student enrollment into the Hospitality Administration Program. According to information provided by Denise Johnson-Kincade ("Johnson-Kincaid"), Vice Chancellor for Enrollment as of April 2021, students were continuing to enroll in the Hospitality Administration Program.

(28) After Phelps was removed from employment in April 2021, both of the adjuncts who taught in the Hospitality Administration Program continued to teach. Both adjuncts worked for Phelps and had been recruited by Phelps. Both were at Ivy Tech less years than Phelps. After Phelps was removed from his position for the reason of low enrollment.

(29) Before the filing of this complaint, Phelps discovered that there were efforts to restart the Hospitality Administration Program at Ivy Tech at the request of Kiefer.

## FIRST CLAIM FOR RELIEF

(30) Phelps repeats and realleges each and every allegation in paragraphs numbered 1 through 29 of this complaint with the same force and effect as if fully set forth herein.

(31) Ivy Tech Community College's conduct subjected Phelps to a pattern or practice of disparate treatment based on race relative to compensation, terms, conditions, and privileges of employment, in violation of Title VII and Section 1981.

(32) Ivy Tech Community College's conduct was intentional and also reflects malice or reckless disregard for the federal statutory civil rights of Phelps.

(33) As a result of Ivy Tech Community College's conduct, Phelps is now suffering and will continue to suffer irreparable injury and monetary damages, unless and until, this Court grants relief.

## SECOND CLAIM FOR RELIEF

(34) Phelps repeats and realleges each and every allegation in paragraphs numbered 1 through 29 of this complaint with the same force and effect as if fully set forth herein.

(35) Ivy Tech Community College's conduct subjected Phelps to a pattern or practice of a racially hostile work environment relative to compensation, terms, conditions, and privileges of employment, in violation of Title VII and Section 1981.

(36) Ivy Tech Community College's conduct was intentional and also reflects malice or reckless disregard for the federal statutory civil rights of Phelps.

(37) As a result of Ivy Tech Community College's conduct, Phelps is now suffering and will continue to suffer irreparable injury and monetary damages. unless and until, this Court grants relief.

### THIRD CLAIM FOR RELIEF

(38) Phelps repeats and realleges each and every allegation in paragraphs numbered 1 through 29 of this complaint with the same force and effect as if fully set forth herein.

(39) Ivy Tech Community College's conduct subjected Phelps to a pattern or practice of retaliation relative to compensation, terms, conditions, and privileges of employment, in violation of Title VII and Section 1981.

(40) Ivy Tech Community College's conduct was intentional and also reflects malice or reckless disregard for the federal statutory civil rights of Phelps.

(41) As a result of Ivy Tech Community College's conduct, Phelps is now suffering and will continue to suffer irreparable injury and monetary damages. unless and until, this Court grants relief.

### PRAYER FOR RELIEF

WHEREFORE, Phelps respectfully requests that this Court enter a judgment:

(a) Declaring that the acts and practices complained of herein are in violation of the rights of Phelps under provisions of Title VII and Section 1981;

(b) Enjoining and permanently restraining these violations of Phelps's rights;

(c) Directing Ivy Tech Community College to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Phelps's, or any other person based on race or for exercising rights under federal antidiscrimination laws, including the enjoyment of his rights as a citizen;

(d) Directing Ivy Tech Community College to take steps to make Phelps whole for all losses whether monetary or otherwise, including back wages, reinstatement, front pay, and fringe benefits;

(e) Awarding Phelps compensatory and punitive damages for the injuries suffered as a result of Ivy Tech Community College's violations of Phelps' rights;

(f) Awarding Phelps the costs of this action together with reasonable attorney's fees, as provided by Title VII and Section 1981;

(g) Directing Ivy Tech Community College to pay Phelps prejudgment and post-judgment interest on all sums recovered;

and

(h) Granting such other and further relief as the Court deems necessary and proper.

DEMAND FOR JURY TRIAL

Phelps, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demands a trial by jury in this action.

                                            Respectfully submitted,

                                            ___/Bobby A Potters_____
                                            Bobby A Potters
                                            Attorney at Law
                                            3272 Hooker Street
                                            Plainfield, Indiana 46168
                                            Telephone: 317-926-1028
                                            bpotters@tds.net

                                            Attorney for Watez G. Phelps